Gustavo DIAZ, M.D., Petitioner

v.

Carolyn WESTPHAL, individually and a/n/f of Eric Michael Westphal, a minor, and as independent executrix of the estate of Michael Westphal, deceased, Respondent.

No. 96–0433.

Supreme Court of Texas.

March 21, 1997.

Carlos Villarreal, Corpus Christi, for petitioner.

J. Norman Thomas, Corpus Christi, for respondent.

GONZALEZ, Justice.

In this medical malpractice case, we must decide whether Carolyn Westphal brought the wrongful death and survival claims she asserted on behalf of her minor child within the applicable statute of limitations. The trial court rendered summary judgment for the defendant doctor, holding that the suit was not timely. A divided court of appeals reversed and remanded the minor's claims for trial. 918 S.W.2d 543. We reverse the judgment of the court of appeals and render judgment for the defendant.

## I

The facts of this case are largely undisputed. From 1977 to 1984, Dr. Gustavo Diaz prescribed Cytoxan to treat Michael Westphal's Hodgkin's disease. Diaz last treated Mr. Westphal on August 6, 1984. In September 1984, while on vacation out of state, Mr. Westphal experienced bleeding from his urinary tract and an inability to urinate. He went to a local hospital, where an emergency-room doctor advised him that he had been taking Cytoxan too long, that the drug was causing his bleeding, and that he should cease taking the drug. He continued his vacation, and although he ceased taking Cytoxan, Mr. Westphal's symptoms continued. He again required hospitalization while on vacation. Upon returning to Texas, Mr. Westphal visited another emergency room, and his condition again required hospitalization.

Mr. Westphal did not sue Diaz at that time, but decided not to consult him again. Mr. Westphal selected another doctor, who treated his Hodgkin's disease and his urinary tract problems. Later, in 1987 or 1988, Mr. Westphal's wife Carolyn gave birth to a child, Eric Westphal.[1] In April 1991, during examinations before bladder reconstructive surgery, the new doctor discovered bladder cancer. Mr. Westphal did not file suit against Diaz before he died on April 27, 1992.

On May 20, 1993, Carolyn Westphal brought this suit against Diaz and Methodist Hospital, alleging statutory wrongful death and survival claims on behalf of her son, herself, and Mr. Westphal's estate. She contended that Diaz negligently prescribed Cytoxan to Mr. Westphal for an extended period of time and that such prolonged duration and dosage proximately caused his fatal cancer. Diaz answered with a general denial and moved for summary judgment solely on the ground that the two-year limitations provision found in section 10.01 of the Medical Liability and Insurance Improvement Act (the Medical Liability Act) barred the Westphals' claims. See Tex.Rev.Civ. Stat. art. 4590i, § 10.01. In response, the Westphals alleged that section 10.01 violated the Texas Constitution's "open courts" provision as applied in this case and that it did not govern the minor child's claims. See Tex. Const. art. I, § 13. The trial court granted Diaz's motion, rendered summary judgment that the Westphals take nothing, and severed the claims against Diaz from those brought against Methodist Hospital.

With one justice dissenting, the court of appeals affirmed the trial court's summary judgment on Carolyn Westphal's claims and the claims she brought for Mr. Westphal's estate, holding that the limitations period had expired before she filed suit. 918 S.W.2d at 546. However, the appellate court reversed and remanded Eric Westphal's claims for trial. Id. at 551. In distinguishing his claims, the court reasoned that section 10.01 contained a tolling provision that extends the time within which minors may bring suit and that "Diaz's summary judgment motion and proof are inadequate to establish that the statute of limitations barred Eric's claims." Id. at 546–47. Only Diaz applied for writ of error. We granted the writ to determine whether, as Diaz contends, the court of appeals erred in reversing the trial court's summary judgment with respect to Eric Westphal.

## II

We review Diaz's complaints under well known summary judgment standards. See Sysco Food Serv., Inc. v. Trapnell, 890 S.W.2d 796, 800 (Tex.1994); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves

1. The summary judgment record does not establish the exact date of the child's birth.

for summary judgment based on limitations must establish the defense as a matter of law. *Jennings v. Burgess,* 917 S.W.2d 790, 793 (Tex.1996); *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). To satisfy this burden, the defendant must conclusively negate any relevant tolling doctrines the plaintiff asserted in the trial court. *Jennings,* 917 S.W.2d at 793; *see Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975) (per curiam).

■ Victims of medical negligence have a common-law right to sue for their injuries. *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 843 (Tex.1990). In contrast, wrongful death and survival claims are statutory in nature. *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 345 (Tex.1992); *see* Tex. Civ. Prac. & Rem. Code § 71.004 (conferring cause of action upon surviving spouse, children, and parents of decedent for damages decedent may have recovered if he had lived); *id.* § 71.021 (allowing decedent's heirs, legal representatives, and estate to bring suit for personal injuries decedent suffered before death). The right to maintain such actions "is entirely derivative of the decedent's right to have sued for his own injuries immediately prior to his death, and is subject to the same defenses to which the decedent's action would have been subject." *Russell,* 841 S.W.2d at 347.

■ The Legislature enacts statutes of limitation to ensure that claims are brought within a reasonable, prescribed time after a wrong occurs. *Russell,* 841 S.W.2d at 349; *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). The parties to this case agree that Michael Westphal could have exercised his common-law right to sue Dr. Diaz for negligence within the limitations period prescribed in section 10.01 of the Medical Liability Act, which represents the Legislature's determination of what constitutes a reasonable time for bringing health care liability claims.[2] This statute provides:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.

Tex.Rev.Civ. Stat. art. 4590i, § 10.01. Section 10.01 imposes an absolute two-year limitations period that runs from any one of three possible events: (1) the date the breach or tort occurred; (2) the date the treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. *State v. Thirteenth Court of Appeals,* 933 S.W.2d 43, 46 (Tex.1996) (per curiam); *Chambers v. Conaway,* 883 S.W.2d 156, 158 (Tex.1993); *see Jennings,* 917 S.W.2d at 793. One may extend the two-year period for seventy-five days by giving notice of a claim. *See* Tex.Rev.Civ. Stat. art. 4590i, § 4.01(c).

To refute Diaz's limitations defense, the Westphals contend in this Court that section 10.01's tolling provision extended the time for filing Eric Westphal's claims. They did not raise this argument in the court of appeals. Accordingly, we do not address the issue.

The Westphals do not dispute that Diaz last treated Mr. Westphal on August 6, 1984. Under section 10.01, the limitations period for his prospective medical malpractice claim began to run on August 6, 1984 and, absent a statutory notice letter, expired two years later. *See Bala v. Maxwell,* 909 S.W.2d 889, 891 (Tex.1995) (per curiam) (noting that, under section 10.01, limitations period begins on last date of treatment if injury results from negligent course of treatment, rather than specific instance of negligence); *see also Rowntree v. Hunsucker,* 833 S.W.2d 103, 105 (Tex.1992) ("There are some situations in which the statute would run from the date of the last drug treatment, if the course of that

---

2. By statute, a health care liability claim is "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient." Tex.Rev.Civ. Stat. art. 4590i, § 1.03(a)(4).

treatment is the direct cause of the injury."). The Westphals concede that Michael Westphal failed to bring suit within this two-year window and that limitations ran on his prospective claim against Diaz unless a tolling provision saved it. Consequently, because Eric Westphal's statutory claims are entirely derivative of his father's rights, Diaz was entitled to summary judgment if he conclusively disproved all tolling doctrines the Westphals pleaded that might have saved Mr. Westphal's potential negligence suit.[3] *See Jennings,* 917 S.W.2d at 793; *Russell,* 841 S.W.2d at 347.

### III

The court of appeals held that, because a fact issue existed as to whether Michael Westphal could have maintained a medical negligence claim immediately before he died, Diaz failed to conclusively prove that limitations barred Eric Westphal's wrongful death and survival claims. 918 S.W.2d at 547. In its opinion, the appellate court discussed two doctrines that arguably could have tolled Mr. Westphal's claim: the discovery rule and the Texas Constitution's open courts provision. Before beginning our analysis, we note that the court of appeals treated the discovery rule and the open courts doctrine as if they are one in the same. *See* 918 S.W.2d at 546–47 (purporting to apply "the discovery rule" to determine whether section 10.01 is unconstitutional as applied to Eric Westphal's derivative claims). We disagree with the court of appeals' approach given our explication of the respective tests below, although it appears we have never expressly distinguished them before today. *See Morrison v. Chan,* 699 S.W.2d 205, 206–08 (Tex.1985) (treating plaintiff's open courts challenge distinctly from her argument urging application of discovery rule without discerning subtle differences between tests); *see also Desiga v. Scheffey,* 874 S.W.2d 244, 248 (Tex.App.—Houston [14th Dist.] 1994, no writ) ("Unfortunately, the various courts of appeals, in analyzing the constitutionality of the statute

in terms of the open courts provision, have used language similar to the abrogated discovery rule, thereby creating some confusion over the pleading and application of this constitutional argument."); *Del Rio v. Jinkins,* 730 S.W.2d 125, 128 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) ("The two terms have very technical meanings and should not be interchanged.").

### A

■ This Court adopted the discovery rule in *Gaddis v. Smith,* 417 S.W.2d 577, 580 (Tex.1967), a medical malpractice case. In so doing, we intended to assist courts in construing limitations statutes that expressly define the triggering event as the date a plaintiff's cause of action "accrued." *Nelson v. Krusen,* 678 S.W.2d 918, 920 (Tex.1984) (citing *Gaddis,* 417 S.W.2d at 580). This rule of statutory construction suspends accrual, and thus the running of limitations, "until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.1996) (citing *Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex.1994)); *see Krusen,* 678 S.W.2d at 920.

However, Diaz's summary judgment motion and supporting evidence establish that section 10.01 applies, and the Westphals offered no argument or proof to the contrary. We have repeatedly held that section 10.01 establishes an absolute two-year statute of limitations for health care liability claims, thereby abolishing the discovery rule in cases governed by the Medical Liability Act. *See, e.g., Jennings,* 917 S.W.2d at 793; *Krusen,* 678 S.W.2d at 920. By statute, Mr. Westphal's prospective cause of action accrued, if at all, on August 6, 1984, the date Diaz last treated him. *See* Tex.Rev.Civ. Stat. art. 4590i, § 10.01; *Bala,* 909 S.W.2d at 891.

■ Nevertheless, the Westphals argue that Mr. Westphal could not have known Diaz's alleged negligence would result in his

---

3. Outside the health care liability context, wrongful death and survival claims are subject to a two-year limitations period commencing on the date of death. Tex. Civ. Prac. & Rem. Code § 16.003(a); *Bala v. Maxwell,* 909 S.W.2d 889, 892 (Tex.1995) (per curiam). When the action is based on medical negligence, however, the Medical Liability Act's time limitation controls. *Bala,* 909 S.W.2d at 892–93.

terminal cancer, and therefore the statute of limitations did not begin to run on his medical malpractice claim until April 1991, when doctors discovered and informed him of this condition. In effect, the Westphals contend that the minor child's derivative claims, which his mother brought on May 20, 1993, were not barred by limitations because the father had a valid claim against Diaz immediately before his death on April 27, 1992. Under the established discovery-rule jurisprudence discussed above, this position is without merit. As a matter of law, the discovery rule could not apply to preserve Mr. Westphal's claim beyond August 1986, when section 10.01's two-year period expired.

**B**

Responding to Diaz's motion for summary judgment based on his limitations defense, the Westphals alleged that section 10.01 violates the open courts provision of the Texas Constitution. This provision states that "[a]ll courts shall be open, and every person for an injury done him, and his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. Unlike the discovery rule, the open courts doctrine is grounded in the constitutional guarantee of due process.[4] *See Morrison,* 699 S.W.2d at 207. This doctrine "is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible condition." *Moreno,* 787 S.W.2d at 355.

■ To establish a right to redress under the open courts provision, a litigant must show (1) that he has a cognizable common-law cause of action, and (2) that restriction of the claim is unreasonable or arbitrary when balanced against the statute's purpose. *Moreno,* 787 S.W.2d at 355; *see Jennings,* 917 S.W.2d at 793; *Rose,* 801 S.W.2d at 843). In several instances, we have held that the Medical Liability Act or its predecessors violated the open courts provision when applied to the facts of a particular case. *See, e.g., Weiner v. Wasson,* 900 S.W.2d 316, 318 (Tex. 1995); *Lucas v. United States,* 757 S.W.2d

687, 690 (Tex.1988); *Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex.1985); *Krusen,* 678 S.W.2d at 923. Moreover, we have applied open courts to determine that the Medical Liability Act's limitations period unconstitutionally restricted a minor's claim. *See, e.g., Weiner,* 900 S.W.2d at 318 (holding section 10.01 unconstitutional because it cut off minor plaintiff's medical malpractice action before he reached majority and could sue on his own behalf); *Sax v. Votteler,* 648 S.W.2d 661, 667 (Tex.1983) (determining that predecessor to section 10.01 precluded minor plaintiff "from having her day in court to complain of an act of medical malpractice"). Diaz contends that the open courts doctrine does not apply because Eric Westphal cannot satisfy the first element of the open courts test. We agree.

At common law, no personal injury cause of action survived to a deceased tort victim's heirs, and the heirs had no claim for their own losses resulting from the tortious act. *Kramer v. Lewisville Mem'l Hosp.,* 858 S.W.2d 397, 403 (Tex.1993). Such actions exist today only by statute. *See* Tex. Civ. Prac. & Rem.Code §§ 71.002, -.004, -.021; *Moreno,* 787 S.W.2d at 356. The court of appeals acknowledged that the child's cause of action is wholly statutory in nature. 918 S.W.2d at 546. However, in addressing the first part of the open courts test, the court of appeals analyzed whether *Mr. Westphal,* not his son, possessed a common-law remedy abrogated by section 10.01. *See id.* at 547–48. Without citing authority, the court of appeals assumed that the child's statutory claims could be saved if the open courts doctrine would have applied to preserve Mr. Westphal's potential common-law claim against Diaz.

■ In *Rose v. Doctors Hospital,* 801 S.W.2d 841 (Tex.1990), Rex Rose's widow and parents sued Doctors Hospital for wrongful death. Applying the two-part open courts test, we asked first "whether the *Roses'* remedy is based upon a cognizable common law cause of action." *Rose,* 801 S.W.2d

---

**4.** The United States Constitution contains no comparable open courts guarantee. *Lucas v.*

*United States,* 757 S.W.2d 687, 690 (Tex.1988).

 

at 845 (emphasis added). In answering that question, we stated:

> Like all actions based upon theories of negligence, the Roses' cause of action was a common law claim. It would have died with Rex Rose had it not been preserved by the legislature in the wrongful death statute. The Roses' remedy, therefore, was conferred by statute, not by the common law. Because the Roses do not seek a common law remedy, the open courts provision does not apply to their wrongful death claim.

*Id.* (citation omitted); *see also Moreno,* 787 S.W.2d at 355 (concluding that, when plaintiff's cause of action "was not recognized at common law, but was itself created by the legislature, any legislative abrogation of the cause of action would not be a true abrogation of a constitutional right"). We have adhered to this reasoning in recent cases. *See Baptist Mem'l Hosp. v. Arredondo,* 922 S.W.2d 120, 121–22 (Tex.1996) (per curiam) (concluding that wrongful death plaintiff could not satisfy first prong of open courts test because plaintiff's claim was purely statutory, although action was based on medical malpractice); *Bala,* 909 S.W.2d at 893 (holding that, "[b]ecause the Maxwells have no common law right to bring either a wrongful death or survival action, they cannot establish an open courts violation"). As with the Roses, Eric Westphal's claims are based upon a theory of negligence—that Diaz negligently over-prescribed Cytoxan to his father, ultimately causing his father's fatal cancer. Also like the Roses, Eric Westphal's sole remedy was conferred by statute, not by the common law. Thus, as a matter of law, the open courts doctrine does not apply to this case.

### IV

Diaz conclusively established his limitations defense. The summary judgment evidence shows that Michael Westphal failed to file suit against Diaz within the Medical Liability Act's statute of limitations, which would have applied to his prospective malpractice claim. As a matter of law, neither the discovery rule nor the open courts doctrine applied to toll limitations under the facts of this case. Because limitations would have

barred Mr. Westphal's common-law action against Diaz, his son's wrongful death and survival claims are also barred. *See Russell,* 841 S.W.2d at 345. Accordingly, we reverse the judgment of the court of appeals and render judgment that the Westphals take nothing.